UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| MICHAEL N.,[1]<br><br>                    Plaintiff,<br><br>     vs.<br><br>NANCY A. BERRYHILL, Acting<br>Commissioner, Social Security<br>Administration,<br><br>                    Defendant. | CIV. 17-5067-JLV<br><br>AMENDED ORDER |

**INTRODUCTION**

Plaintiff Michael N. filed a complaint appealing the final decision of Nancy A Berryhill, the Acting Commissioner of the Social Security Administration, finding him not disabled.   (Docket 1).   The Commissioner denies plaintiff is entitled to benefits.   (Docket 10).   The court issued a briefing schedule requiring the parties to file a joint statement of material facts ("JSMF").   (Docket 12).   The parties filed their JSMF.   (Docket 15).   For the reasons stated below, plaintiff's motion to reverse the decision of the Commissioner is granted.

---

[1]The Administrative Office of the Judiciary suggested the court be more mindful of protecting from public access the private information in Social Security opinions and orders.   For that reason, the Western Division of the District of South Dakota will use the first name and last initial of every non-governmental person, except physicians and other professionals, mentioned in the opinion.   This includes the names of non-governmental parties appearing in case captions.

## FACTUAL AND PROCEDURAL HISTORY

The parties' JSMF (Docket 15) is incorporated by reference. Further recitation of salient facts is incorporated in the discussion section of this order. On April 24, 2014, plaintiff filed an application for disability insurance benefits ("DIB"). Id. ¶ 1. He alleged an onset of disability date of September 4, 2010. Id. On July 25, 2016, an administrative law judge ("ALJ") issued a decision finding plaintiff was not disabled. Id. ¶ 5; see also Administrative Record at pp. 19-37 (hereinafter "AR at p. ____"). The Appeals Council denied plaintiff's request for review and affirmed the ALJ's decision. (Docket 15 ¶ 7). The ALJ's decision constitutes the final decision of the Commissioner of the Social Security Administration. It is from this decision which plaintiff timely appeals.

The issue before the court is whether the ALJ's decision of July 25, 2016, that plaintiff "has not been under a disability within the meaning of the Social Security Act from September 4, 2010, through [July 25, 2016]" is supported by substantial evidence in the record as a whole. (AR at p. 37) (bold omitted); see also Howard v. Massanari, 255 F.3d 577, 580 (8th Cir. 2001) ("By statute, the findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive.") (internal quotation marks and brackets omitted) (citing 42 U.S.C. § 405(g)).

## STANDARD OF REVIEW

The Commissioner's findings must be upheld if they are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); Choate v. Barnhart, 457 F.3d 865, 869 (8th Cir. 2006); Howard, 255 F.3d at 580. The

court reviews the Commissioner's decision to determine if an error of law was committed. <u>Smith v. Sullivan</u>, 982 F.2d 308, 311 (8th Cir. 1992). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." <u>Cox v. Barnhart</u>, 471 F.3d 902, 906 (8th Cir. 2006) (internal citation and quotation marks omitted).

The review of a decision to deny benefits is "more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision . . . [the court must also] take into account whatever in the record fairly detracts from that decision." <u>Reed v. Barnhart</u>, 399 F.3d 917, 920 (8th Cir. 2005) (quoting <u>Haley v. Massanari</u>, 258 F.3d 742, 747 (8th Cir. 2001)).

It is not the role of the court to re-weigh the evidence and, even if this court would decide the case differently, it cannot reverse the Commissioner's decision if that decision is supported by good reason and is based on substantial evidence. <u>Guilliams v. Barnhart</u>, 393 F.3d 798, 801 (8th Cir. 2005). A reviewing court may not reverse the Commissioner's decision " 'merely because substantial evidence would have supported an opposite decision.' " <u>Reed</u>, 399 F.3d at 920 (quoting <u>Shannon v. Chater</u>, 54 F.3d 484, 486 (8th Cir. 1995)). Issues of law are reviewed *de novo* with deference given to the Commissioner's construction of the Social Security Act. <u>See</u> <u>Smith</u>, 982 F.2d at 311.

The Social Security Administration established a five-step sequential evaluation process for determining whether an individual is disabled and entitled to DIB under Title II.   20 CFR § 404.1520(a).   If the ALJ determines a claimant is not disabled at any step of the process, the evaluation does not proceed to the next step as the claimant is not disabled.   Id.   The five-step sequential evaluation process is:

> (1) whether the claimant is presently engaged in a "substantial gainful activity"; (2) whether the claimant has a severe impairment— one that significantly limits the claimant's physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations (if so, the claimant is disabled without regard to age, education, and work experience); (4) whether the claimant has the residual functional capacity to perform . . . past relevant work; and (5) if the claimant cannot perform the past work, the burden shifts to the Commissioner to prove there are other jobs in the national economy the claimant can perform.

Baker v. Apfel, 159 F.3d 1140, 1143-44 (8th Cir. 1998).   The ALJ applied the five-step sequential evaluation required by the Social Security Administration regulations.   (AR at pp. 20-21).

**STEP ONE**

At step one, the ALJ determined plaintiff had "not [been] engaged in substantial gainful activity since September 4, 2010, the alleged onset date." (AR at p. 21; see also Docket 15 ¶ 10).

## STEP TWO

At step two, the ALJ must decide whether the claimant has a medically determinable impairment that is severe or a combination of impairments that are severe. 20 CFR § 404.1520(c). A medically determinable impairment can only be established by an acceptable medical source. 20 CFR § 404.1513(a). Accepted medical sources include, among others, licensed physicians. Id. "It is the claimant's burden to establish that [his] impairment or combination of impairments are severe." Kirby v. Astrue, 500 F.3d 705, 707 (8th Cir. 2007).

The regulations describe "severe impairment" in the negative. "An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities." 20 CFR § 404.1521(a). An impairment is not severe, however, if it "amounts to only a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." Kirby, 500 F.3d at 707. Thus, a severe impairment is one which significantly limits a claimant's physical or mental ability to do basic work activities.

The ALJ identified plaintiff suffered from the following severe impairments: "lumbar degenerative disk disease (DDD) with history of lumbar fusion with chronic right L5 radiculopathy; and myofascial pain disorder and internal derangement bilaterally of the temporal mandibular joints." (Docket 15 ¶ 11). The ALJ found plaintiff suffered from the following impairments which were not severe: "borderline obesity, adjustment disorder with mixed

anxiety and depressed mood, and pain disorder associated with psychological factors and a general medical condition." Id. ¶ 12. Plaintiff does not challenge these findings. (Dockets 18 & 20).

**STEP THREE**

At step three, the ALJ determines whether claimant's impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 ("Appendix 1"). 20 CFR §§ 404.1520(d), 404.1525, and 404.1526. At this step the ALJ determined plaintiff's severe impairments did not meet or equal a listing under Appendix 1. (Docket 15 ¶ 13). Plaintiff does not challenge this finding. (Dockets 18 & 20).

**STEP FOUR**

Before considering step four of the evaluation process, the ALJ is required to determine a claimant's residual functional capacity ("RFC"). 20 CFR § 404.1520(e). RFC is a claimant's ability to do physical and mental work activities on a sustained basis despite any limitations from his impairments. 20 CFR §§ 404.1545(a)(1). In making this finding, the ALJ must consider all the claimant's impairments, including those which are not severe. 20 CFR § 404.1545(e). All the relevant medical and non-medical evidence in the record must be considered. 20 CFR §§ 404.1520(e) and 404.1545.

"The ALJ should determine a claimant's RFC based on all the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of [her] limitations." Lacroix v. Barnhart, 465 F.3d 881, 887 (8th Cir. 2006) (quoting Strongson v. Barnhart, 361 F.3d 1066, 1070 (8th Cir. 2004)); see also Cox v. Astrue, 495 F.3d 614, 619 (8th Cir. 2007) (because RFC is a medical question, the ALJ's decision must be supported by some medical evidence of a claimant's ability to function in the workplace, but the ALJ may consider non-medical evidence as well); Guilliams, 393 F.3d at 803 ("RFC is a medical question, and an ALJ's finding must be supported by some medical evidence."). The ALJ "still 'bears the primary responsibility for assessing a claimant's residual functional capacity based on all relevant evidence.'" Id. (citing Roberts v. Apfel, 222 F.3d 466, 469 (8th Cir. 2000)).

"In determining RFC, the ALJ must consider the effects of the combination of both physical and mental impairments." Stormo v. Barnhart, 377 F.3d 801, 807 (8th Cir. 2004) (citing Baldwin v. Barnhart, 349 F.3d 549, 556 (8th Cir. 2003)). As stated earlier in this discussion, a severe impairment is one which significantly limits an individual's physical or mental ability to do basic work activities. 20 CFR § 404.1521(a).

Relevant to this appeal, the ALJ determined plaintiff retained the RFC to perform "light work . . . except that [he] can lift/carry ten pounds frequently and ten pounds occasionally; can occasionally climb ladders, ropes, or

scaffolds; and can occasionally stoop, kneel, crouch, crawl, or balance."[2]

(Docket 15 ¶ 14).   Plaintiff challenges this finding.   (Docket 18).   Plaintiff

argues the RFC is not valid because "the ALJ's adverse credibility assessment

is [not] supported by substantial evidence."   Id. at p. 1 (capitalization and bold

omitted).   He contends "[d]espite Plaintiff's cooperation with extensive medical

care and treatment, all of his [board-certified specialists] . . . have given

residual functional capacities that would place Plaintiff at a less than sedentary

level of work at less than full time."   Id. at pp. 2-3.   Plaintiff submits rejecting

these "treating and examining physicians' opinions constitute error of law."

Id. at p. 1 (bold omitted).   The court will separately address plaintiff's

challenges.

1.   WHETHER THE ALJ'S ADVERSE CREDIBILITY
ASSESSMENT IS SUPPORTED BY SUBSTANTIAL
EVIDENCE

A.   Plaintiff's Credibility

Addressing plaintiff's credibility, the ALJ found:

[C]laimant's medically determinable impairments could reasonably
be expected to cause the alleged symptoms; however, the claimant's
statements concerning the intensity, persistence and limiting effects
of these symptoms are not entirely consistent with the medical

_____

[2]"Light work involves lifting no more than 20 pounds at a time with
frequent lifting or carrying of objects weighing up to 10 pounds.   Even though
the weight lifted may be very little, a job is in this category when it requires a
good deal of walking or standing, or when it involves sitting most of the time
with some pushing and pulling of arm or leg controls.   To be considered
capable of performing a full or wide range of light work, you must have the
ability to do substantially all of these activities."   20 CFR § 404.1567(b).

evidence and other evidence in the record for the reasons explained
in this decision.

(AR at p. 25).   Stated another way, the ALJ discounted plaintiff's credibility

with the following statement:

[T]he objective medical evidence shows the claimant's back surgery
was successful with good fusion and minimal residual spine
problems.   He complains of ongoing severe pain, but he is regularly
in no or only mild distress and he is able to ambulate and transition
independently.     Additionally,  the  claimant  reports  70  percent
improvement with his spinal cord stimulator and the record shows
that the claimant remains active including driving to his daughter's
softball games.

Id. at p. 32.

Plaintiff argues the ALJ did not "specifically discuss [the] Polaski[3] factors

or provide evidence supporting his conclusory rejection of Plaintiff's credibility."

(Docket 18 at p. 8).   Plaintiff contends the ALJ did not "discuss Plaintiff's prior

work record.   The ALJ rejects observations by third parties and treating and

examining physicians regarding Plaintiff's pain, using the very same conclusory

paragraph that was repeated eight times throughout the decision."   Id.   He

submits "[t]he ALJ does not address Plaintiff's long-standing narcotic pain and

other medication use and does not discuss the dosage, effectiveness and side

effects of the medication in his credibility analysis."   Id. at p. 9.   Plaintiff

argues "[w]hile the ALJ recites Plaintiff testimony with respect to his daily

activity, duration, frequency and intensity of the pain precipitating and

_____

[3]Polaski v. Heckler, 739 F.2d 1320 (8th Cir. 1984).

aggravating factors, he rejects it in a conclusory statement with little to no evidence supporting the same." Id. at pp. 8-9.

The Commissioner argues "the ALJ is not required to explicitly discuss each [Polaski] factor." (Docket 19 at p. 3) (referencing Buckner v. Apfel, 646 F.3d 549, 558 (8th Cir. 2011) (citing Goff v. Barnhart, 421 F.3d 785, 791 (8th Cir. 2005)). The Commissioner contends "the ALJ's inferences need only be reasonable because '[t]he credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts.' " Id. at pp. 3-4 (citing Bradley v. Astrue, 528 F.3d 1113, 1115 (8th Cir. 2008) (quoting Pearsall v. Massanari, 274 F.3d 1211, 1218 (8th Cir. 2001)).

The Commissioner asserts the ALJ noted:

1.  [T]he objective medical evidence showed Plaintiff's back surgery had been successful with good fusion and minimal residual spine problems. Id. at p. 4 (referencing AR at p. 35).

2.  [A]lthough Plaintiff complained of ongoing severe pain, he regularly was in no or only mild distress and could ambulate and transition independently. Id. (referencing AR at p. 35).

3.  Plaintiff reported experiencing a 70 percent improvement in his pain with his spinal cord stimulator. Id. (referencing AR at p. 35).

4.  Plaintiff was able to continue to participate in activities such as driving, attending his daughter's softball games, and throwing darts on a darts team. Id. (referencing AR at pp. 30 & 35; Docket 15 ¶ 17).

The Commissioner argues an ALJ may consider a claimant's activities "in evaluating the credibility of the claimant's subjective allegations, and they may

constitute some evidence supporting the ALJ's RFC assessment." Id. at p. 5

(referencing Ponder v. Colvin, 770 F.3d 1190, 1195-96 (8th Cir. 2014). The

Commissioner asserts "[a]lthough Plaintiff's treatment did not eliminate his

pain entirely, 'the crucial question is not whether [the claimant] experienced

pain, but whether [the claimant's] credible subjective complaints prevent him

from performing any type of work.' " Id. (citing Gregg v. Barnhart, 354 F.3d

710, 713-14 (8th Cir. 2003)). The Commissioner argues the ALJ's findings

"contradict[] [plaintiff's] claim that his pain was so severe and limiting as to

render him completely disabled and unable to perform any type of work." Id.

The Commissioner concludes "[b]ecause the ALJ's inferences were reasonable,

and he provided good reason for finding the record did not support the severity

of symptoms and limitations Plaintiff alleged, the Court should defer to the

ALJ's credibility finding and dismiss Plaintiff's argument challenging it." Id. at

pp. 5-6.

Plaintiff's reply argues "[t]he record in this case is substantially different

from the Ponder case." (Docket 20 at p. 4). Plaintiff submits:

> [H]e treated consistently for his back injury and debilitating pain
> following his fusion surgery. His complaints are well documented
> throughout his longstanding treating physician, a board-certified
> physician specially trained and experienced in treating non-surgical
> chronic pain, Dr. Christopher Dietrich's medical records.
>
> Plaintiff had some variations in his levels of pain and his physical
> function, that is consistent and expected with his chronic pain
> syndrome and failed back surgery, and consistent with his
> testimony that he has good days and bad days.

Id. Plaintiff asserts his "treating physicians have given specific opinions with respect to plaintiff's limitations and ability to function as a result of his severe and chronic pain and his failed back surgery. . . . All of the treating physicians have opined that plaintiff would be unable to sustain an eight-hour day, five day a week schedule with his debilitating pain and severe medical conditions." Id. at p. 5 (internal reference omitted).

Under Polaski and subsequent cases, an ALJ is required to consider the following:

> The absence of an objective medical basis which supports the degree of severity of subjective complaints alleged is just one factor to be considered in evaluating the credibility of the testimony and complaints. The adjudicator must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as:
>
> 1. the claimant's daily activities;
>
> 2. the duration, frequency and intensity of the pain;
>
> 3. precipitating and aggravating factors;
>
> 4. dosage, effectiveness and side effects of medication; [and]
>
> 5. functional restrictions.
>
> The adjudicator is not free to accept or reject the claimant's subjective complaints solely on the basis of personal observations. Subjective complaints may be discounted if there are inconsistencies in the evidence as a whole.

Polaski, 739 F.2d at 1322 (emphasis omitted).  An ALJ is not required to explicitly address each factor.  There must be an analysis of those areas particularly relevant to each case.  Buckner, 646 F.3d at 558.

The ALJ discussed plaintiff's work activities during the period 2010-2012 which "did not rise to the level of substantial gainful activity."  (AR at p. 21). Part of this period was before plaintiff's September 4, 2010, injury with the remainder being his effort at light duty work to see if he could return to full-time employment.  Those efforts, working only a couple hours a day were unsuccessful because of plaintiff's pain in his back and legs.  (Docket 15 ¶ 32).  The ALJ only made passing reference to this work effort and did not give plaintiff any credit for trying to come back from his injury.

Troubling to the court is the ALJ's declaration of the four areas which diminished plaintiff's complaints of subjective pain and impacted his credibility.  Each of those must be separately addressed.

1.   The objective medical evidence showed Plaintiff's back surgery had been successful with good fusion and minimal residual spine problems.

This statement by the ALJ is factually accurate but it fails to recognize the true status of plaintiff's post-surgery condition.  It is true that board-certified neurosurgeon Dr. Tim Watt found plaintiff's lumbar fusion and decompression surgery to be a structural success.  Id. ¶ 135.  However, Dr. Watt deferred to Dr. Dietrich, a board-certified physiatrist and another of

plaintiff's treating pain physicians, as to any nerve damage and resulting pain.

Id. ¶ 80.

Dr. Dietrich treated plaintiff 40 times over the course of six years.   Id.

¶¶ 76 & 77.   The record is very clear about Dr. Dietrich's medical opinions as

to plaintiff's condition.   Those opinions are summarized as follows:

1.    While Dr. Watt's surgery successfully "decompressed the
      nerve, the nerves were damaged and the damage is
      permanent."   The nerves have "died" off or they were
      "damaged in a fashion that they will not recover."   Id.
      ¶ 77(k).

2.    The surgical delay "resulted in significant nerve damage and
      resulted in [plaintiff's] current nerve pain syndrome."   Id.
      ¶ 77(j).

3.    Plaintiff "has failed back syndrome and chronic pain as a
      result of his work injury."   Id. ¶ 77(e).

4.    Plaintiff "suffers from damaged nerves resulting in pain that
      is permanent and irreversible."   Id. ¶ 77(g).

5.    Plaintiff's symptoms are "consistent with nerve damage and
      a failed back syndrome."   Id. ¶ 77(i).

An EMG of August 30, 2012, ordered by Dr. Dietrich "showed

electrodiagnostic evidence of a chronic right L5 radiculopathy.[4]   (Docket 15

---

[4]"Lumbar radiculopathy refers to any disorder that affects the nerve roots
in the spine in the lower back. . . . Lumbar radiculopathy is typically caused by
compression of the nerves due to inflammation, 'wear and tear', or trauma. . . .
Pain is typically described as throbbing, aching, sharp, dull, burning, pressure,
numbness, tingling, or shooting.   Back pain is usually present, but leg
symptoms are the primary problem."   American Academy of Physical Medicine
and Rehabilitation.   https://www.aapmr.org/about-physiatry/conditions-
treatments/musculoskeletal-medicine/lumbar-radiculopathy.

¶ 142).   Dr. Watt's own post-surgical CT scan on February 28, 2014, showed the fusion, DDD with disc bulging.   See AR at p. 851-52.   Dr. Kevin Whittle, a state agency consulting physician, acknowledged the existence of this post-surgical condition.   (AR at p. 162).

While the ALJ chose to accept the opinions of the two state agency consulting physicians, those physicians did not challenge or contradict Dr. Dietrich's medical opinions concerning plaintiff's condition.   (Docket 15 ¶¶ 88 & 89; see also AR at pp. 144-48 & 161-62).

The ALJ's use of this first statement is not consistent with the medical record and does not constitute a valid basis upon which the ALJ may judge plaintiff's credibility.

2.      Although Plaintiff complained of ongoing severe pain, he regularly was in no or only mild distress and could ambulate and transition independently.

While the ALJ addressed many of plaintiff's medical encounters, the ALJ did not acknowledge all of them and entirely failed to mention the course of treatments provided, including the administration of prescription drugs.   Dr. Dietrich performed five SI joint injections.   (Docket 15 ¶¶ 129, 130, 135-36, 139).   These injections were not successful in reducing plaintiff's pain.   Id. Plaintiff has had multiple CT myelograms to ascertain the cause of his pain. Id. ¶¶ 133-34, 161 & 169-70.   Because injections and pain medications were not successful in reducing plaintiff's pain, Dr. Dietrich referred him to Dr.

Gust, Dr. Monasky, Dr. Trevor Anderson and Dr. Corenman for second opinions.  Id. ¶¶ 137, 144, 146 & 163.

Dr. Gust charted plaintiff "exhibited tenderness, decreased range of motion, pain and spasm in his lumbar area. . . . [He] was very tender to palpation and had a significant amount of spasm in his lumbar spine."  Id. ¶ 137.  Dr. Gust's assessment included "back pain, lumbar degenerative disk disease, right leg numbness, and status post lumbar fusion. . . . [H]e could be having discogenic back pain from L5-Sl . . . . [And] he was probably having pain in the level below his previous fusion."  Id.

Dr. Monasky's examination noted plaintiff "alternated his activity and was sitting and standing alternately.   He had low back pain with numbness radiating in his right leg and foot including his big toe and last two toes."  Id. ¶ 144.  The doctor's examination charted "straight leg raises positively bilaterally and decreased ranges of motion."  Id.  "Dr. Monasky had no surgical options for him."  Id.  The doctor's only suggestion is that plaintiff "may ultimately need to be referred to a pain specialist for consideration of a spinal cord stimulator."  Id.

Following his examination on December 26, 2012, Dr. Trevor Anderson, a board-certified physiatrist,

> concluded that due to Plaintiff's chronic right neuropathic pain related to chronic L5 radiculopathy as seen on EMG and concordant with history; history of L4-5 fusion with no resolution of leg symptoms and no further surgical treatment options; and chronic

opioid use with physical dependence, it seems reasonable to start
on the road of attempting [a] spinal cord stimulator for Plaintiff.

Id. ¶ 146.

Orthopedic surgeon Dr. Echrich "surgically implanted an epidural

neurostimulator" on March 27, 2013.   Id. ¶ 151.   While plaintiff received some

relief from the neurostimulator, which will be discussed later in this order, he

continued to experience debilitating pain.

On August 28, 2014, Dr. Corenman charted plaintiff "had limited range

of motion in his back.   Sensory dermatomes on the L4-L5 and S1 on the right

were decreased.   Straight leg raise was positive for left leg pain and positive for

right back and right leg pain."   Id. ¶ 163.   Like the physicians before him, Dr.

Corenman offered no suggested surgical options.   Id.

Through the entire six-year period and continuing to February 22, 2016,

plaintiff "continued with significant back and leg nerve pain, sciatic pain and

radicular pain with certain activities, positions and movements."   Id. ¶ 170.

During this same extensive period, Dr. Dietrich prescribed powerful pain

medications:

Lyrica[5] (Id. ¶ 129);

---

[5]"Lyrica is used to treat pain caused by fibromyalgia, or nerve pain in
people with diabetes (diabetic neuropathy), herpes zoster (post-herpetic
neuralgia), or spinal cord injury."   https://www.drugs.com/lyrica.html.

Ambien[6] (Id. ¶ 134);

Hydrocodone[7] (Id.);

Oxycodone[8] (Id.);

Opana ER[9] (Id. ¶ 156);

Flexeril[10] (Id. ¶ 158);

Robaxin[11] (Id. ¶ 162).

---

[6]"Ambien is used to treat insomnia. . . . Ambien may impair your thinking or reactions.   You may still feel sleepy the morning after taking this medicine . . . . Wait at least 4 hours or until you are fully awake before you do anything that requires you to be awake and alert." https://www.drugs.com/ambien.html.

[7]"Hydrocodone is an opioid pain medication." https://www.drugs.com/search.php?searchterm=Hydrocodone.

[8]"Oxycodone is an opioid pain medication sometimes called a narcotic. Oxycodone is used to treat moderate to severe pain." https://www.drugs.com/search.php?searchterm=Oxycodone.

[9]"Opana ER is an opioid medication used to treat moderate to severe pain.   The extended-release form of oxymorphone is for around-the-clock treatment of pain[.]" https://www.drugs.com/search.php?searchterm=Opana+ER+.

[10]"Flexeril (cyclobenzaprine) is a muscle relaxant.   It works by blocking nerve impulses (or pain sensations) that are sent to your brain.   Flexeril is used together with rest and physical therapy to treat skeletal muscle conditions such as pain, injury, or spasms." https://www.drugs.com/search.php?searchterm=Flexeril.

[11]"Robaxin (methocarbamol) is a muscle relaxant.   It works by blocking nerve impulses (or pain sensations) that are sent to [the] brain.   Robaxin is used together with rest and physical therapy to treat skeletal muscle conditions such as pain or injury." https://www.drugs.com/search.php?searchterm=Robaxin.

As noted by the references to the record, many of these prescription pain medications were administered simultaneously. Dr. Dietrich continued to prescribe Lyrica, Ambien, Oxycodone, Opana ER, Oxymorphone,[12] Methylprednisolone[13] and Cymbalta[14] through 2016. Id. ¶ 170) (referencing AR at p. 1548). Dr. Dietrich concluded "Plaintiff has been extremely compliant and willing to try any modalities suggested in order to deal with his chronic pain." Id. ¶ 77(f).

It must be remembered that because of plaintiff's ongoing pain experiences he began "having jaw pain secondary to pain and clenching[.]" Id. ¶ 164. The ALJ found plaintiff had a severe impairment, "myofascial pain disorder and internal derangement bilaterally of the temporal mandibular joints [TMJ]." Id. ¶ 11.

---

[12]"Oxymorphone is an opioid medication used to treat moderate to severe pain. The extended-release form of oxymorphone is for around-the-clock treatment of pain and should not be used on an as-needed basis for pain." https://www.drugs.com/search.php?searchterm=Oxymorphone.

[13]"Methylprednisolone is a corticosteroid medicine that prevents the release of substances in the body that cause inflammation. [It] is used to treat many different inflammatory conditions such as arthritis[.]" https://www.drugs.com/methylprednisolone.html.

[14]"Cymbalta (duloxetine) is a selective serotonin and norepinephrine reuptake inhibitor antidepressant (SSNRI). Duloxetine affects chemicals in the brain that may be unbalanced in people with depression. Cymbalta is used to treat major depressive disorder in adults. It is also used to treat general anxiety disorder in adults . . . ." https://www.drugs.com/cymbalta.html.

Against this complete medical history, the ALJ disingenuously concludes the medical records do not support the severity of plaintiff's complaints. Contrary to the ALJ's ruling, the objective medical records support a definitive conclusion that plaintiff suffered permanent, debilitating pain.[15]   In this record, there is no suggestion that plaintiff is a malinger or drug-seeker, but rather an individual observed by not just one but many qualified physicians and medical care providers to be in chronic, severe pain.

The ALJ's declaration that plaintiff's "statements regarding the intensity, persistence and limiting effects of these symptoms are not *entirely* consistent with the medical evidence and other evidence" in the record sets the bar too high.   Id. ¶ 15 (emphasis added).   There not need be complete corroboration between a claimant's medical records and his testimony.   "The ALJ may not disregard subjective evidence concerning pain merely because it was not fully corroborated by the objective evidence."   Smith v. Schweiker, 728 F.2d 1158, 1163 (8th Cir. 1984).   With plaintiff's diagnoses and based on the medical records identified above, the objective medical evidence supports the level of severity asserted by plaintiff.

---

[15]In addition to the discussion in this order, the court adopts and incorporates plaintiff's summary of Dr. Dietrich's records of plaintiff's condition.   See Docket 20 at pp. 9-10.

The ALJ's second justification is not consistent with the medical record and does not constitute a valid basis upon which the ALJ may judge plaintiff's credibility.

  3.  Plaintiff reported experiencing a 70 percent improvement in his pain with his spinal cord stimulator.

Plaintiff made this statement during a clinical examination by Dr. Dietrich in March 2015.   (AR at p. 31) (referencing AR. 1524).   The ALJ reported this statement as fact as a result of plaintiff's testimony during the administrative hearing.   Id. at p. 25.

However, adopting plaintiff's statement as factually accurate by the ALJ is disingenuous.   During the administrative hearing, the ALJ questioned plaintiff about this matter.

Q  Okay.   And in your opinion, do you get relief from that spinal stimulator?

A  Yes, sir.

Q  All right.   Now, when you get up in the morning after having laid in bed, et cetera, and you get up at 6:00 and before you take your Opana or any other medications, you indicated . . . your pain as a general rule, and correct me if I'm wrong, was generally at a constant level between a level six to an eight, is that correct?

A  Yes, sir.

Q  And then at times, it'll get up to a level ten?

A  Yes, sir.

Q  Okay.   And do you have any idea in a week's time how often your back pain is at a level ten?

21

A In a week's time, probably one to two. . . . Depending on what my activities are.

Q All right. Now, when you have that spinal implant, do you turn it on and off or do you have it one [sic] 24 hours a day?

A I have it on all the time until I—unless I—I turn it off when I—when I use the restroom, and I'll turn it off at night.

Q So when you're in bed at night, you don't have your spinal implant on?

A Correct.

Q So then when you get up in the morning, on that pain scale of one to ten, where would you put your pain?

A Right there around an eight.

Q Okay. So when you get up, your pain is at a level eight. All right. Now, when you get up, do you turn the implant on?

A After I use the restroom, yes, I do.

Q All right. And then <u>when that implant is on and you've been at a level eight pain, do you know on that pain scale of one to ten where you would say your pain was at after the implant was turned on?</u>

A Yes, sir. <u>It'll take it down to a six or a seven.</u>

Q <u>So you don't get much relief at all from it then?</u>

A <u>I feel like I do. Mentally—</u>

Q <u>Well a six or a seven is not a lot of relief. I mean that's what, maybe 20% relief, but you could distinguish between and [sic] eight level pain and a six or seven level pain?</u>

A Well I mean, I can tell when I—yeah. I can tell the difference of my pain from—

Q All right. Okay.

A      [W]hen I have it on to when I don't have it on.

(AR at pp. 85-87) (emphasis added).

It is clear from plaintiff's explanation he does **not** get a 70 percent improvement by using the spinal stimulator. As the ALJ stated in the hearing, at best plaintiff may have a 20 percent improvement, but still has pain at the six to seven level.[16] This is still debilitating pain.

It borders on outrageous that the ALJ would ignore plaintiff's explanation, given the ALJ's own statements during the hearing, and then concluding "[p]laintiff reported experiencing a 70 percent improvement in his pain with his spinal cord stimulator." (AR at p. 32).

The ALJ's third justification is not consistent with the record and does not constitute a valid basis upon which the ALJ may judge plaintiff's credibility.

    4.     Plaintiff was able to continue to participate in activities such as driving, attending his daughter's softball games, and throwing darts on a darts team.

During the hearing, plaintiff testified "[h]e only drives when he has to and not for very far." (Docket 15 ¶ 52). He testified that his trip to Denver from

---

[16]The actual mathematical calculation recreates a range of improvement between 12.5% and 25%. The calculation is: 8-7=1÷12.5% and 8-6=2÷8=25%.

Rapid City for a medical appointment took "12 hours."[17]  Id. ¶ 54.  The trip

took so long because plaintiff "needed to stop often, get out and walk around,

or his legs would go numb."  Id.  Generally, plaintiff reported that "[d]riving

causes him a lot of pain and discomfort."  Id. ¶ 113.

Plaintiff acknowledged trying to "help[] coach his daughter's softball but

he's not able to physically demonstrate anything and needs to take breaks and

rest.  He tries to do the line-ups and keep the books, one time a week."  Id.

¶ 94 (emphasis added).  "He still tries to watch his kid's softball games during

the summer."  Id.

Plaintiff reported he "plays darts at various places once a week"  Id.

¶ 104.  But "that causes him . . . discomfort"  Id.  "He is able to throw darts

with difficulty[.]"  Id. ¶ 112.  Plaintiff stated he was "not able to pick up the

darts from the floor. . . . One of the guys on his dart leagues bought him a

grabber with a retractable magnet to use to pick up the darts or else his friends

will pick them up for him."  Id. ¶ 45.

The ALJ's credibility analysis ignores the very essence of plaintiff's

disability and the diminished way in which he functions.  For the ALJ to

declare plaintiff is not credible in his expression of pain and discomfort

because of his limited ability to engage in some activities of daily living is

---

[17]It is common knowledge and the court takes notice of the fact the time
to travel from Rapid City, South Dakota, to Denver, Colorado, takes on average
six and one-half to seven hours.

inconsistent with the record. The ALJ's fourth justification does not constitute a valid basis upon which the ALJ may judge plaintiff's credibility.

The court concludes there are "no inconsistencies in the record that justify finding [plaintff] not credible." <u>Taylor v. Chater</u>, 118 F.3d 1274, 1278 (8th Cir. 1997)). The decision of the ALJ to find plaintiff not credible is unsupported by the substantial evidence in the record. The evidence supporting plaintiff's credibility "fairly detracts from [the Commissioner's] decision." <u>Reed</u>, 399 F.3d at 920 (quoting <u>Haley</u>, 258 F.3d at 747); <u>Morse v. Shalala</u>, 32 F.3d 1228, 1229 (8th Cir. 1994). When examined in detail, the record supports rather than contradicts plaintiff's testimony. <u>Dukes v. Barnhart</u>, 436 F.3d 923, 928 (8th Cir. 2006); <u>Guilliams</u>, 393 F.3d at 801-02. As a result, the court finds the ALJ's credibility determination of plaintiff is not supported by substantial evidence.

The court finds plaintiff's testimony is credible and supported by the substantial evidence in the record. <u>Taylor</u>, 118 F.3d at 1278; <u>Reed</u>, 399 F.3d at 920; <u>Morse</u>, 32 F.3d at 1229; <u>Dukes</u>, 436 F.3d at 928; <u>Guilliams</u>, 393 F.3d at 801-02.

### B. <u>Mother's Credibility</u>

Plaintiff's mother submitted a third-party function report. (Docket 15 ¶¶ 100-108). The ALJ indicated he "considered" her report but found her "testimony . . . not persuasive" for the same four reasons he discounted plaintiff's credibility. (AR at p. 26; <u>see</u> <u>also</u> Docket 15 ¶ 16).

For the same reasons the court rejects the ALJ's justification for discounting plaintiff's credibility, the court rejects those four statements as a basis for discounting plaintiff's mother's credibility. As the court previously noted:

> [T]he regulations encourage an ALJ to seek the testimony of family members because they have the most frequent contact and exposure to the claimant's physical and mental impairments. See 20 CFR §§ 404.1512(b)(1)(iii) . . . and 404.1513(d)(4) . . . . Consideration of third party statements also must be considered when an ALJ is evaluating a claimant's pain. See 20 CFR § 404.1529(a).

Dillon v. Colvin, 210 F. Supp. 3d 1198, 1207 (D.S.D. 2016).

"Evidence includes . . . [s]tatements . . . others make about your impairment(s), your restrictions, your daily activities, your efforts to work, or any other statements you make to medical sources during the course of examination or treatment, or to us during interviews, on applications, in letters, and in testimony in our administrative proceedings . . . ." 20 CFR § 404.1512(b)(1)(iii). "In addition to evidence from the acceptable medical sources . . . . [the agency] may also use evidence from other sources to show the severity of your impairment(s) and how it affects your ability to work. Other sources include, but are not limited to . . . . Other non-medical sources (for example, spouses, parents and other caregivers, siblings, other relatives, friends, neighbors, and clergy). . . ." 20 CFR § 404.1513(d)(4).

Plaintiff's mother's functional report describes her son's condition in vivid detail. (Docket 15 ¶¶ 100-108). "Failure to consider [her] testimony is

26

contrary to the regulations. 20 CFR §§ 404.512(b)(1)(iii), 404.1513(d)(4), and 404.1529(a). The conclusion to give her . . . testimony little or no weight is not supported by substantial evidence and the ALJ did not provide good reasons for discounting the testimony." Id. In addition, the refusal of the ALJ to consider her description of her son's activities of daily living impact the step four analysis of establishing a residual functional capacity ("RFC") for him.

The court finds plaintiff's mother credible and her report consistent with the substantial evidence in the record.

### C. Doctors' Credibility

#### 1. DR. WATT

The ALJ discussed the surgery performed by Dr. Watt and his subsequent care of plaintiff. (AR at p. 32). The ALJ concluded Dr. Watt's opinions were entitled to "little weight" for the same four reasons the ALJ gave little weight to plaintiff and his mother's credibility. (Docket 15 ¶ 24).

"A treating physician's opinion is given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." House v. Astrue, 500 F.3d 741, 744 (8th Cir. 2007) (citation and internal quotation marks omitted). However, "while entitled to special weight, it does not automatically control, particularly if the treating physician evidence is itself inconsistent." Id. (citations and internal quotation marks omitted). If the treating physician's opinion is not given controlling weight under

20 CFR §§ 404.1527(d)(2), it must be weighed considering the factors in 20 CFR §§ 404.1527(d)(2)-(6).   See Shontos v. Barnhart, 328 F.3d 418, 426 (8th Cir. 2003) ("Where controlling weight is not given to a treating source's opinion, it is weighed according to the factors enumerated . . . .").   The ALJ must "give good reasons for discounting a treating physician's opinion."   Dolph v. Barnhart, 308 F.3d 876, 878-79 (8th Cir. 2002).   The court must "defer to an ALJ's credibility finding[s] as long as the ALJ . . . gives a good reason [for those findings]."   Schultz v. Astrue, 479 F.3d 979, 983 (8th Cir. 2007) (internal citation and quotation marks omitted).

The ALJ gave controlling weight to the two state agency consulting physicians.   (AR at p. 35).   State agency consulting physician Dr. Francis Yamamoto rejected the opinions of Dr. Watt, Dr. Dietrich and Dr. Anderson and found plaintiff "not disabled."   Id. at p. 147.   State agency consulting physician Dr. Kevin Whittle made the same factual errors adopted by the ALJ.

> [Claimant] is partially credible.   In his [activities of daily living] he states that he goes to his daughter's sporting events and plays darts. States he can carry 20 lbs and walk 10-15 minutes.   It is noted in the medical documentation that [claimant] drove himself to Colorado and it was an 8 hour drive but states that 1 hour drives to his daughter's sporting events are difficult for him.

Id. at p. 160.   The ALJ found those "opinions are consistent with the record and are given weight" for the same four reasons discussed above.   Id. at p. 35; see also Docket 15 ¶¶ 88 & 89).

28

"The opinion of a consulting physician who examines a claimant once or not at all does not generally constitute substantial evidence."   Kelley v. Callahan, 133 F.3d 583, 589 (8th Cir. 1998).   Neither of these consulting physicians physically examined plaintiff or interviewed him.   As described in detail above, the declarations are factually inaccurate and are not an appropriate summary of plaintiff's activities of daily living.   In this case, the reviews conducted by the consulting physicians are not supported by the objective medical evidence.

The ALJ erred, both factually and as a matter of law, when he chose to give substantial weight to the opinions of the consulting physicians.   The Commissioner's findings on this issue are not supported by substantial evidence in the record as a whole.   42 U.S.C. § 405(g); Choate, 457 F.3d at 869.

For the same reasons the court rejects the ALJ's justification for discounting plaintiff's credibility, the court rejects those four statements as a basis for discounting Dr. Watt's credibility.   The ALJ's decision to reject the opinions of Dr. Watt is not supported by good reason and is not based on substantial evidence.   Guilliams, 393 F.3d at 801; Dolph, 308 F.3d at 878-79; and Schultz, 479 F.3d at 983.   As a treating physician, Dr. Watt's opinions are entitled to controlling weight as those opinions are consistent with the medical records and are "not inconsistent with the other substantial evidence." House, 500 F.3d at 744.

## 2.    DR. DIETRICH

The ALJ gave "little weight" to Dr. Dietrich's opinions for the same four reasons discussed above.    (Docket 15 ¶ 21).    For the same reasons the court rejects the ALJ's justification for discounting plaintiff's credibility, the court rejects those four statements as a basis for discounting Dr. Dietrich's credibility.    The ALJ erred, both factually and as a matter of law, when he chose to give substantial weight to the opinions of the consulting physicians over the opinions of Dr. Dietrich.    42 U.S.C. § 405(g); <u>Choate</u>, 457 F.3d at 869. The ALJ's decision to reject the opinions of Dr. Dietrich is not supported by good reason and is not based on substantial evidence.    <u>Guilliams</u>, 393 F.3d at 801; <u>Dolph</u>, 308 F.3d at 878-79; and <u>Schultz</u>, 479 F.3d at 983.    As a treating physician, Dr. Dietrich's opinions are entitled to controlling weight as those opinions are consistent with the medical records and are "not inconsistent with the other substantial evidence."    <u>House</u>, 500 F.3d at 744.

## 3.    DR. ANDERSON

The ALJ gave "little weight" to Dr. Anderson's opinions for the same four reasons discussed above.    (Docket 15 ¶ 27).    For the same reasons the court rejects the ALJ's justification for discounting plaintiff's credibility, the court rejects those four statements as a basis for discounting Dr. Anderson's credibility.    The ALJ erred, both factually and as a matter of law, when he chose to give substantial weight to the opinions of the consulting physicians over the opinions of Dr. Dietrich.    42 U.S.C. § 405(g); <u>Choate</u>, 457 F.3d at 869.

The ALJ's decision to reject the opinions of Dr. Anderson is not supported by good reason and is not based on substantial evidence. Guilliams, 393 F.3d at 801; Dolph, 308 F.3d at 878-79; and Schultz, 479 F.3d at 983. As a treating physician, Dr. Anderson's opinions are entitled to controlling weight as those opinions are consistent with the medical records and are "not inconsistent with the other substantial evidence." House, 500 F.3d at 744.

### D. Physical Therapist

Physical Therapist Phil Busching performed an extensive physical work performance, commonly referred to as a functional capacity evaluation ("FCE") on February 4, 2014. (Docket 15 ¶ 81). Mr. Busching made detailed findings about plaintiff's capacity to engage in physical activity. Id. ¶¶ 83-87. Based on his training and experience and the FCE, Mr. Bushing concluded plaintiff "was not capable of sustained work at the light level for an eight hour day." Id. ¶ 82. The ALJ gave the opinions of Mr. Busching "little weight" for the same four reasons discussed above. (Docket 15 ¶ 19).

For the same reasons the court rejects the ALJ's justification for discounting plaintiff's credibility, the court rejects those four statements as a basis for discounting Mr. Busching's credibility. The ALJ's decision to reject the opinions of Mr. Busching is not supported by good reason and is not based on substantial evidence. Guilliams, 393 F.3d at 801; Dolph, 308 F.3d at 878-79; and Schultz, 479 F.3d at 983.

31

2.     RESIDUAL FUNCTIONAL CAPACITY

The ALJ found plaintiff was "capable of performing work at the light exertional level" subject to a number of limitations.   (Docket 15 ¶ 14; see also AR at p. 35).   The ALJ rejected the FCE prepared by Mr. Busching which reported plaintiff "was incapable of sustaining light work for an eight hour day."   Id. ¶ 18.

In April 2013, Dr. Anderson reported plaintiff had several permanent employment restrictions.   Id. ¶ 78.   Most significant in those restrictions was that plaintiff could only work up to six hours a day, four days a week.   Id.

Based on his testing, Mr. Busching concluded plaintiff was unable to complete the three-hour FCE without added rest periods.   (Docket 15 ¶ 83). With this caveat, he reported that as of February 4, 2014, plaintiff had certain physical limitations on his performance characters[18] but concluded "[p]laintiff was not capable of sustained work . . . for an eight hour day."   Id. ¶ 82.

After the FCE, in July 2014, Dr. Dietrich concluded:

1.     Plaintiff is unable to work an eight hour day, five days a week on a continuing and sustained basis.   Id. ¶ 77(a).

2.     Plaintiff would be able to work three to four hours a day with frequent breaks and changes in positions per his FCE . . . as a result of his back pain and leg sciatic pain. Id. ¶ 77(b).

3.     Plaintiff's medical condition would be expected to require him to lie down two to four hours during and [sic] eight hour work day.   Id. ¶ 77(c).

---

[18]See Docket 15 ¶ 83.

4.  Plaintiffs medical condition would reasonably be expected to result in unscheduled absences of four to six times per month. <u>Id.</u> ¶ 77(d).

Because the opinions of Dr. Dietrich and Dr. Anderson are entitled to controlling weight, the ALJ's RFC which did not incorporate the doctors' opinions is not supported by substantial evidence.   42 U.S.C. § 405(g); <u>Choate</u>, 457 F.3d at 869; <u>Howard</u>, 255 F.3d at 580.   The ALJ did not complete a proper analysis of plaintiff's RFC at step four.   Remand to permit the ALJ to complete the step four analysis would normally be in order.   But adopting the opinions of Dr. Dietrich, Dr. Anderson and Mr. Busching makes remand at this point unnecessary.

**STEP FIVE**

The "burden of production shifts to the Commissioner at step five." <u>Stormo</u>, 377 F.3d at 806.   The ALJ found plaintiff was unable to return to his past relevant work. (Docket 15 ¶ 280).

William Tysdal, a vocational expert, testified:

1.  Based on the Plaintiff's testimony . . . he could not do his past employment or any jobs that exist in significant numbers in the national economy.   <u>Id.</u> ¶ 64.

2.  After reviewing Mr. Busching's [FCE] . . . the functional capacity assessment limited Plaintiff to less than sedentary level of work and he was not employable.   <u>Id.</u> ¶ 65.

3.  [A] person who was absent more than one to two times per month was not employable.   <u>Id.</u> ¶ 68.

4.  [I]f an employee is off task more than 10 to 15% of the time, they would not be employable.   <u>Id.</u>

33

5.  [I]f a worker . . . needed to take a five to 10 minute break every hour, that would be excessive and beyond the off task limitation and they would not be employable. . . . Frequent breaks would not be tolerated to maintain employment . . . . Id. ¶ 69.

6.  A person that needed to leave their work station to get up and move around four to five times an hour would be excessive and employers would not tolerate that. . . . [M]ost jobs have ongoing work processes which demand that a worker be in certain posture for certain lengths of time to accomplish tasks. Id. ¶ 70.

7.  The six jobs identified by Mr. Tysdal would not allow a worker to alternate from sitting, standing and laying [sic] down when a worker needs to.   Id. ¶ 71.

8.  If a person needed to work no more than three to four hours a day with frequent breaks and change positions, they could not perform the jobs [identified by Mr. Tysdal].   Id. ¶ 72.

9.  If a Plaintiff needed to lie down or assume a recumbent position during an eight hour day, Plaintiff could not perform the jobs identified by Mr. Tysdal.   Id. ¶ 73.

10. If a Plaintiff is not able to bend over and pick up paper or something from the ground, that would preclude employment . . . . If a Plaintiff could not work bent over while sitting, then the jobs identified by Mr. Tysdal would be eliminated.   Id. ¶ 74.

11. When considering the limitations by Dr. Trevor Anderson's opinions, . . . there would be no work that Plaintiff could perform.   Id. ¶ 75.

In other words, plaintiff is not qualified for any work position and there are no jobs available to him.

The court may affirm, modify, or reverse the Commissioner's decision, with or without remand to the Commissioner for a rehearing.   42 U.S.C.

34

§ 409(g).   If the court determines that the "record overwhelmingly supports a disability finding and remand would merely delay the receipt of benefits to which the plaintiff is entitled, reversal is appropriate."   Thompson v. Sullivan, 957 F.2d 611, 614 (8th Cir. 1992).   Remand to the Commissioner is neither necessary nor appropriate in this case.   The Commissioner's own final witness, Mr. Tysdal, compels resolving this case in favor of claimant.   Plaintiff is disabled and entitled to benefits.   Reversal is the appropriate remedy at this juncture.   Thompson, supra.

## ORDER

Based on the above analysis, it is

ORDERED plaintiff's motion (Docket 18) is granted and the decision of the Commissioner of July 25, 2016, is reversed and the case is remanded to the Commissioner for the purpose of calculating and awarding benefits to the plaintiff.

Dated March 30, 2019.

BY THE COURT:

/s/ *Jeffrey L. Viken*

JEFFREY L. VIKEN
CHIEF JUDGE